## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PETER HUNSADER,

          **Plaintiff,**

v.                                      **Case No: 8:12-cv-2080-T-27MAP**

DEPUTY GREGG MELITA,

          **Defendant.**

_____/

## ORDER

    **BEFORE THE COURT** is Defendant Melita's Motion for Summary Judgment (Dkt. 14). Plaintiff has responded in opposition (Dkt. 17).  Upon consideration, the Defendant is entitled to qualified immunity and the Motion (Dkt. 14) is GRANTED.  The record conclusively demonstrates that the undisputed facts support arguable probable cause for Defendant's arrest of Plaintiff.

    Plaintiff brings this action against Defendant for violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 arising out of what he contends was an unlawful arrest for criminal mischief.  (Dkt. 1).  Defendant moves for summary judgment on Plaintiff's claim arguing he is entitled to qualified immunity because he had probable cause, or arguable probable cause, for the arrest of Plaintiff.  (Dkt. 14).

### UNDISPUTED FACTS

    On May 12, 2010, Phillip Cruse returned home from work around four o'clock in the afternoon to discover that the floodlights at the entryway of his property had been smashed.  (Phillip Cruse Dep. 9:2-16, 12:4-10, Aug. 26, 2013, Dkt. 14-2; Dkt. 1, ¶ 15).  Mr. Cruse's wife, Cheryl Cruse, returned home shortly after him.  (Cheryl Cruse Dep. 8:21-9:20, Aug. 26, 2013, Dkt 14-3).

Neither Mr. nor Mrs. Cruse had noticed any problem with the floodlights when they left for work earlier that day.  (P. Cruse Dep. 9:9-12; C. Cruse Dep. 9:4-9).  The Cruses also had several video surveillance cameras on their property, including near the entryway.[1]  (P. Cruse Dep. 10:14-15, 13:18-14:7; Dkt. 1, ¶ 16).  The camera facing the gate on the west side of the entryway recorded the incident involving the floodlights. (P. Cruse Dep. 13:25-14:7).  Upon returning home to the damaged floodlights, Mr. Cruse called the sheriff's office.  (*Id.* at 13:6-17).  Defendant responded to the call. (Gregg Melita Dep. 7:7-12, July 31, 2013, Dkt. 17-2).  When Defendant arrived at the Cruses' home, he first spoke with Mr. Cruse, and later with Mrs. Cruse.  (*Id.* at 10:17-11:2).  Mr. Cruse told Defendant that Plaintiff came onto their property and broke their floodlights, but both of the Cruses stated that they had not seen the incident.  (*Id.* at 11:3-22).

After speaking with the Cruses, Defendant checked the floodlights, confirmed that they were damaged, and eventually processed them for any kind of evidence.  (*Id.* 12:3-15).  Defendant then watched the video from the surveillance camera with the Cruses on their television.[2]  (*Id.* at 11:23-12:2, 12:25-10; C. Cruse Dep. 12:13-16).  At the same time, Defendant had the Cruses fill out affidavits.  (Melita Dep. 11:25-12:2).  Defendant only viewed the part of the video that included the white car driving by the Cruses' house and the floodlight incident.  (*Id.* at 13:19-14:1).  This part of the video first shows a white car driving by the Cruse home.  (Video, Dkt. 16; Melita Dep. 14:2-5). Both Mr. and Mrs. Cruse identified it as Plaintiff's car.  (Melita Dep. 14:4-11).  The car stops just

---

[1] The Cruses installed the video cameras after other incidents on their property involving whom they believed to be Plaintiff.  (C. Cruse Dep. 22:11-23:16; P. Cruse Dep. 38:5-49:20).  Defendant had previously responded to a call by the Cruses regarding an incident with Plaintiff a couple of weeks before the floodlight incident.  Defendant met and spoke with Plaintiff at that time, but did not arrest him.  (Melita Dep. 8:18-10:9).

[2] The surveillance video is attached as an exhibit (Dkt. 14-2, Ex. 2; Dkts. 15, 16).  There are four video segments, each having a different file number.  These videos have been viewed by the Court.  The race and physical characteristics of the man depicted on the video, as well as his clothing and gait, are plainly seen.

past the Cruses' gate, backs up, and stops again directly in front of one of the gate posts, where one

of the floodlights is located, for approximately fifteen seconds. (Video, File # 234429, Dkt. 16).

Defendant knew where Plaintiff lived and that he would have no other way to get to his house except

to pass the Cruses' house. (*Id.* at 14:14-20). The Cruses' house is in a rural area with only three

neighbors on their road, with Plaintiff's property at the end of the road. (P. Cruse Dep. 8:17-9:1; C.

Cruse Dep. 7:16-24). A couple of minutes after the white car drives by, the video shows a man

walking from the left onto the Cruses' property, then running up to each floodlight, and appearing

to smash them with an object. (Video, File #2340840, Dkt 16; Melita Dep. 15:3-11; C. Cruse Dep.

12:19-13:9; P. Cruse Dep. 14:15-21). The man then runs back in the same direction he came from.

(Video, File #2340840, Dkt 16.)

 Although Defendant was not able to identify the man in the video, Mr. and Mrs. Cruse

identified him as Plaintiff. (Melita Dep. 15:14-16; C. Cruse Dep. 13:10-14; P. Cruse Dep. 14:14-

20). Defendant testified he was able to determine that the man in the video was a "large white man."

(Melita Dep. 15:12-13). The Cruses also told Defendant that they had been having an ongoing

dispute with [Plaintiff] for a long time," that they "know his car" and "have known him for years and

they were positive it was [Plaintiff]." (*Id.* at 16:5-12). Mr. and Mrs. Cruse were certain that the man

on the video was Plaintiff.[3] (P. Cruse Dep. 16:7-15; C. Cruse Dep. 14:14-19). Although Mrs. Cruse

---

[3] Plaintiff asserts there are material factual disputes between Mr. Cruse's account of what he saw in the video and what the video actually shows. (Dkt. 17 at 9-10). Specifically, Mr. Cruse indicated that he could see the man's "funky little ears that stick straight out," that he has a "queer little run down the street" and "runs with his arms hanging out." (P. Cruse Dep. 18:3-12.) Mr. Cruse also indicated that the man in the video had a bald head, and similar build and demeanor as Plaintiff, (*id.* at 18:13-25), all of which made him certain that the man was Plaintiff. Plaintiff argues that no facial features or ears are visible in the video and that "any resemblance to Plaintiff is a visual fiction." (Dkt. 17 at 10). However, Mr. Cruse also acknowledged that he could only make out "silhouette features" of the man, but also recognized his style of shorts and shirt. (P. Cruse Dep. 19:1-9). There is no evidence that Mr. Cruse relayed these specific reasons for his identification of Plaintiff to Defendant. Nonetheless, Mr. Cruse's testimony regarding the ears and facial features is not material. The other characteristics upon which he relied were sufficient to make his identification reliable.

could not identify the man's facial features one hundred percent, she was familiar with his run and walk because she had seen him walk and play soccer. (C. Cruse Dep. 14:1-8). She described Plaintiff's walk and jog as "dumpy." (*Id.*) She also estimated that Plaintiff is approximately five foot nine inches and 230-240 pounds. (*Id.* at 14:9-13). Significantly, Mr. and Mrs. Cruse completed sworn affidavits attesting to what they saw in the video and identifying Plaintiff. (*Id.* at 14:23-15:1, 16:12-17; P. Cruse Dep. 21:19-22:16).

Defendant then went to Plaintiff's house, about a quarter of a mile down the road from the Cruses, and spoke with him. (Melita Dep. 19:5-21). When Defendant arrived at Plaintiff's property, Plaintiff was in his car, which was small and white. (*Id.* at 20:12-17). Defendant informed Plaintiff he was there because of an allegation by the Cruses and read him his Miranda rights. (*Id.* at 21:14-20). Plaintiff stated that he did not do anything and that he had nothing to say. (*Id.* at 21:17-20; Dkt. 14-1 at 8). Defendant then placed Plaintiff under arrest and put him in the patrol car. (*Id.* at 22:10-14; Dkt. 14-1).

STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). However, once the movant has satisfied this burden,

4

"[t]he burden then shifts to the nonmoving party to go beyond the pleadings and to present evidentiary materials designating specific facts that show a genuine issue." *Penaloza v. Target Corp.*, 2013 WL 5828008, *1 (11th Cir. 2013) (citing *Celotex*, 477 U.S. at 324).

### DISCUSSION

"'Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct violates clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" *Wilkerson v. Seymour*, 2013 WL 6153874, --- F.3d ---- (11th Cir. Oct. 30, 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir.2010)). "To avoid summary judgment on qualified immunity grounds, the plaintiff's allegations, supported by admissible evidence, must demonstrate both (1) a constitutional violation and (2) that the violation was clearly established. *Id.* "'It is clearly established that an arrest made without probable cause violates the Fourth Amendment.'" *Id.* (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)). "'An officer is entitled to qualified immunity, however, where the officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest' the plaintiff[]." *Id.* (quoting *Redd*, 140 F.3d at 1382). Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted).

"Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause" so long as it is "sufficiently reliable and trustworthy at [its] core to form the basis

5

for probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998); *U. S. v. Simpson*, 484 F.2d 467, 468 (5th Cir. 1973) (holding that a victim's statement to an officer that she had been kidnapped, assaulted and raped, and providing a description of the perpetrator and where he might be found constituted probable cause to make an arrest). This is so regardless of whether the victim turns out to be right. *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) ("When an officer has received his information from some person-normally the putative victim or an eye witness-who it seems reasonable to believe is telling the truth, he has probable cause. Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters.").

The parties do not dispute that Defendant was acting within his discretionary authority or that Plaintiff has alleged a constitutional violation that was clearly established. The issue is whether Defendant had arguable probable cause to arrest Plaintiff for the crime of criminal mischief.[4] Under the facts of this case, this question turns solely on the identification of Plaintiff. In other words, reasonable officers in the same circumstances and possessing the same knowledge as Defendant could have believed that Plaintiff was the individual who damaged the Cruses' floodlights.

Plaintiff argues that it was unreasonable for Defendant to rely on the video and the Cruses' statements identifying Plaintiff as the individual who committed the crime, and therefore the arrest of Plaintiff was made without arguable probable cause in violation of Plaintiff's Fourth Amendment rights.

---

[4] Under Florida law, "A person commits the offense of criminal mischief if he or she willfully and maliciously injures or damages by any means any real or personal property belonging to another, including, but not limited to, the placement of graffiti thereon or other acts of vandalism thereto." Fla. Stat. § 806.13(1)(a). Plaintiff does not dispute that the man's actions caught on the video meet these elements. Plaintiff's only dispute goes to whether Defendant was able to identify the man as Plaintiff.

6

Viewing the evidence in the light most favorable to Plaintiff, it is not possible to identify any of the man's facial features in the video.  However, the individual in the video is clearly male and Caucasian.  The man's build and approximate weight and height are also apparent.  In addition, the man's jog or run (gait) is somewhat unique, as Mr. and Mrs. Cruse explained, and his clothing is clearly identifiable.  Plaintiff attempts to characterize the Cruises' identification of Plaintiff as the man in the video as a "fanciful hunch."  (Dkt. 17 at 9).  The Court disagrees.  Considering their familiarity with Plaintiff, the characteristics of the man relied on by the Cruises in identifying Plaintiff as the individual in the video amount to more than a hunch or guess.

While it would be difficult to identify the man with no frame of reference, the Cruises had known Plaintiff, their neighbor, for approximately ten years at the time of the incident.  (*See* P. Cruse Dep. 37:24-38:7).  The Cruises had observed Plaintiff walk and run before, and were familiar with his height, build, and clothing style.  Mr. and Mrs. Cruse both testified under oath that they were certain it was Plaintiff in the video, and told Defendant as much.  Moreover, Defendant viewed the part of the video showing a white car drive in front of the Cruises' property, reverse, and pause in front of the gate where one of the floodlights was located, as if inspecting something.  Defendant then viewed the individual in the video walking from the direction of Plaintiff's house, running up to the floodlights, and doing something to them, then returning in the direction of Plaintiff's house. Defendant knew where Plaintiff lived.  Defendant also observed the actual damage to the floodlights. When Defendant went to Plaintiff's property, Defendant was able to observe Plaintiff's car, which matched the car depicted in the video.

Defendant concedes that he could not identify the person in the video.  Rather, he relied on the Cruises' identification.  The remaining question, raised by Plaintiff, in determining whether Defendant's reliance on the Cruises' identification of Plaintiff was reasonable, is whether the Cruises' negative perception or predetermined suspicion of Plaintiff should have prompted Defendant to

further investigate. *See Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir.1989). Plaintiff contends that the Cruses' identification of Plaintiff was suspect because of their negative perception of him, and therefore Defendant should not have relied on it. (Dkt. 17 at 9). "[W]hen an officer possesses information that would cause a reasonable officer to have serious doubts about the identity of a suspect, the officer is required to . . . take additional steps to confirm the suspect's identity." *Daniels v. Bango*, 487 F. App'x 532, 537 (11th Cir. 2012). Notwithstanding, the Cruses' history with Plaintiff and their suspicions of him were just not enough to create "serious doubt" as to their identification of Plaintiff such that a reasonable officer would have taken additional steps to confirm the identify of the individual depicted in the video. Defendant's reliance on the sworn affidavits of the Cruses identifying Plaintiff and the fact that they were one hundred percent certain was reasonable under the circumstances.

In sum, reasonable officers in the same circumstances and possessing the same knowledge as Defendant could have believed that Plaintiff was the individual who damaged the Cruses' floodlights, and thus, that arguable probable cause existed to arrest Plaintiff. Therefore, Defendant is entitled to qualified immunity.

Accordingly,

Defendant Melita's Motion for Summary Judgment (Dkt. 14) is **GRANTED**. The Clerk is directed to enter final judgment in favor of Defendant Deputy Gregg Melita and against Plaintiff Peter Hunsader. The Clerk is further directed to close the file.

**DONE AND ORDERED** this 31st day of December, 2013.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:  Counsel of Record

8